No. 23-3155

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Appeal from the United States |
| | ) | District Court for the Northern |
| Plaintiff-Appellant, | ) | District of Illinois, Eastern Division |
| | ) | |
| v. | ) | No. 22-cr-240 |
| | ) | |
| GLEN PRINCE, | ) | The Honorable |
| | ) | ROBERT W. GETTLEMAN, |
| Defendant-Appellee. | ) | Judge Presiding. |

**BRIEF OF AMICI CURIAE ILLINOIS, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAII, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OREGON, PENNSYLVANIA, RHODE ISLAND, WASHINGTON, AND WISCONSIN IN SUPPORT OF PLAINTIFF-APPELLANT AND SEEKING REVERSAL**

**SARAH A. HUNGER**
Deputy Solicitor General
**JOHN R. MILLIGAN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202
Sarah.Hunger@ilag.gov

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

Attorneys for Amici States

*(Additional counsel on signature page)*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................ ii

IDENTITY AND INTEREST OF AMICI STATES ...................................................... 1

SUMMARY OF ARGUMENT ......................................................... 3

ARGUMENT ................................................................................. 5

I.   Exercising Their Authority To Keep Firearms Out Of The Hands Of
     Individuals Who Are Not Law-Abiding, Nearly All States Have Long
     Restricted Felons From Possessing Firearms ...................................................... 5

     A.   The Second Amendment allows States to enact measures to promote
          gun safety and protect against gun violence that are consistent with
          historical tradition ...................................................................... 5

     B.   Section 922(g)(1) is consistent with longstanding measures taken by
          the vast majority of States ......................................................... 10

II.  Any Alternative To § 922(g)(1) Would Create Substantial
     Administrability Problems ................................................................ 14

CONCLUSION ............................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Application of Markham*, 134 N.W.2d 84 (Neb. 1965) ............................................... 11

*Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023)........................................ 5, 14, 15

*Commonwealth v. Chester*, 101 A.3d 56 (Pa. 2014) .................................................... 16

*Culp v. Raoul*, 921 F.3d 646 (7th Cir. 2019) .................................................................. 1

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ........................................... 1, 6, 8

*Evans v. Cook Cnty. State's Att'y*, 183 N.E.3d 810 (Ill. 2021) .................................... 12

*Greer v. United States*, 141 S. Ct. 2090 (2021) .......................................................... 17

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) .................................. 9

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019)................................................................ 1

*McDonald v. City of Chicago*, 561 U.S. 742 (2010).................................................. 6, 9

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ............................................................... 5

*Nelson v. State*, 195 So.2d 853 (Fla. 1967) ................................................................. 11

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) ..............*passim*

*NYSRPA v. City of New York*, 140 S. Ct. 1525 (2020)................................................ 8-9

*Rehaif v. United States*, 139 S. Ct. 2191 (2019).......................................................... 18

*State v. Noel*, 414 P.2d 162 (Ariz. Ct. App. 1966) ...................................................... 11

*United States v. Lopez*, 514 U.S. 549 (1995) ................................................................. 5

*United States v. Mann*, 786 F.3d 1244 (10th Cir. 2015)............................................. 17

*United States v. Mann*, 982 F. Supp. 2d 1251 (D.N.M. 2013)..................................... 17

*United States v. Martinez*, 991 F.3d 347 (2d Cir. 2021) ............................................. 17

*United States v. Morrison*, 529 U.S. 598 (2000) ...................................................... 6

*United States v. Simmons*, 847 Fed. App'x 589 (11th Cir. 2021) ............................ 17

*United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010) ........................................... 1-2

## STATUTES

1 Rev. Stat. of New Jersey 2:176-8 ............................................................... 10

18 Pa. Cons. Stat. Ann. § 6105(b) ............................................................... 13

18 U.S.C. § 922(g)(1) ..................................................................... *passim*

18 U.S.C. § 924 *et seq.* ......................................................................... 16

1923 Cal. Stat. 695, ch. 339 ....................................................................... 10

1923 Conn. Pub. Acts 3707, ch. 252 ........................................................ 10

1923 N.D. Acts 379, c. 266 § 5 .................................................................. 10

1923 N.H. Sess. Laws 138, § 3 .................................................................. 10

1925 Ind. Sess. Laws 495 § 4 ..................................................................... 10

1925 Or. Sess. Laws 468, § 2 ..................................................................... 10

1927 Mich. Acts 887 .................................................................................... 10

1927 N.J. Laws 742 ..................................................................................... 10

1935 S.D. Sess. Laws 355 ........................................................................... 11

1935 Wash. Sess. Laws 599, § 4 ................................................................ 11

1936 Ala. Acts 51 § 4 .................................................................................. 10

430 Ill. Comp. Stat. 65/4(a)(2)(ii) ............................................................ 11

430 Ill. Comp. Stat. 65/8(c) ...................................................................... 11

430 Ill. Comp. Stat. 65/8(n) ...................................................................... 2

430 Ill. Comp. Stat. 65/10(c)(1)-(3) ............................................................... 12

430 Ill. Comp. Stat. 66/25(2) .......................................................................... 2

720 Ill. Comp. Stat. 5/24-3.5(b) ..................................................................... 2

Act of July 8, 1932, Pub L. No. 72-275, ch. 465, § 4, 47 Stat. 650 ............ 10

Act of June 11, 1931, No. 158, §§ 4-5, Pa. Laws 497 ................................. 10

Ala. Code § 13A-11-72(a) ............................................................................. 13

Alaska Stat. § 11.61.200(a)(1) ...................................................................... 13

Alaska Stat. § 11.61.200(b)(1)(c) .................................................................. 13

*An Act to Regulate Commerce in Arms*, Pub. L. No. 75-785, ch. 850, § 2,
52 Stat. 1250 (June 30, 1938) ................................................................ 11

Ariz. Rev. Stat. § 13-904(A)(5) ..................................................................... 11

Ariz. Rev. Stat. § 13-3101(A)(7)(B) .............................................................. 11

Ariz. Rev. Stat. § 13-3102(A)(4) ................................................................... 11

Ark. Code Ann. § 5-73-103 ........................................................................... 11

Cal. Penal Code § 29800(a) .......................................................................... 11

Cal. Penal Code § 27515 ................................................................................ 2

Cal. Penal Code § 27540 ................................................................................ 2

Colo. Rev. Stat. § 18-12-108(1) .................................................................... 11

Colo. Rev. Stat. § 18-12-111 .......................................................................... 2

Colo. Rev. Stat. § 18-12-203(1)(c) ................................................................. 2

Conn. Gen. Stat. § 53a-217c(a) ................................................................... 11

D.C. Code § 22-4503(a) ................................................................................ 11

Del. Code Ann. Tit. 11, § 1448(a)(6) ............................................................ 11

Fla. Stat. § 790.23 ................................................................. 11

Ga. Code Ann. § 16-11-131(b) ............................................ 11

Haw. Rev. Stat. § 134-7 ...................................................... 11

Idaho Code Ann. § 18-3316(1) ............................................ 13

Ind. Code Ann. § 35-47-4-5 ................................................ 13

Iowa Code § 724.26(1) ........................................................ 11

Kan. Stat. Ann. § 21-6304 ................................................... 13

Ky. Rev. Stat. Ann. § 527.040(1) ....................................... 11

La. Rev. Stat. § 14:95:1(A) ................................................. 13

Mass. Gen. Laws. ch. 140, § 131 ........................................ 12

Md. Code Ann., Pub. Safety § 5-101(g)(2) ....................... 11

Md. Code Ann., Pub. Safety § 5-133(b)(1) ........................ 11

Me. Stat. tit. 15, § 393(1) .................................................... 11

Mich. Comp. Laws § 750.224f ........................................... 12

Minn. Stat. § 624.713, subd. (1)(10)(i) .............................. 12

Minn. Stat. § 624.714 ............................................................ 2

Miss. Code Ann. § 97-37-5(1) ............................................ 12

Mo. Rev. Stat. § 571.070(1) ............................................... 12

Mont. Code Ann. § 45-8-313 .............................................. 13

N.C. Gen. Stat. § 14-415.1 ................................................. 12

N.D. Cent. Code § 62-02-01(1)(a) ...................................... 13

N.H. Rev. Stat. Ann. § 159:3 ............................................. 13

N.J. Stat. Ann. § 2C:39-7 ..................................................... 13

N.M. Stat. Ann. § 30-7-16(A) ............................................ 13

N.Y. Penal Law § 400.00 ..................................................... 12

Neb. Rev. Stat. § 28-1206(1)(a) ......................................... 12

Nev. Rev. Stat. § 202.360(1) .............................................. 12

Okla. Stat. tit. 21, § 1283(A) ............................................. 12

Or. Rev. Stat. § 166.250 ..................................................... 12

Or. Rev. Stat. § 166.270 ..................................................... 12

Pub. L. No. 9-618, 82 Stat. 1213-36 (Oct. 22, 1968) ......... 11

R.I. Gen. Laws § 11-47-5 ................................................... 13

R.I. Gen. Laws. § 11-47-23 ................................................. 2

R.I. Gen. Laws, ch. 404, § 3 (1938) ................................... 10

S.C. Code § 16-23-500 ........................................................ 13

S.D. Codified Laws § 22-14-15 ........................................... 13

Tenn. Code Ann. § 39-17-1307(f)(1)(C) ............................. 12

Tex. Penal Code Ann. § 46.04(a), (e) ................................. 13

Utah Code Ann. § 76-10-503 ............................................. 12

Va. Code Ann. § 18.2-308.2 ............................................... 12

Vt. Stat. Ann. tit. 13, § 4017(a) ........................................ 13

W. Va. Code § 61-7-7(a)(1) ............................................... 12

Wash. Rev. Code § 9.41.040 ............................................... 12

Wis. Stat. § 941.29 ............................................................. 12

Wisc. Stat. § 941.29(5)(a) ............................................. 12

Wyo. Stat. § 6-8-102 ................................................... 12

## OTHER AUTHORITIES

*50-State Comparison: Loss & Restoration of Civil/Firearm Rights*,
   Restoration of Rights Project (Sept. 2021) ..................................... 10, 12

Rachel E. Barkow, *Categorical Mistakes: The Flawed Framework of
   the Armed Career Criminal Act and Mandatory Minimum Sentencing*,
   133 Harv. L. Rev. 200 (Nov. 2019) .................................... 15, 16

Official Opinion No. 2019-6, Office of the Indiana Attorney General
   (Dec. 10, 2019) ..................................................... 12

Dru Stevenson, *In Defense of Felon-in-Possession Laws*,
   43 Cardozo L.R. 1573 (2022) .............................. 2, 15, 16, 18

Jakov Zlodre & Seena Fazel, *All-Cause and External Mortality in
   Released Prisoners: Systematic Review and Meta-Analysis*,
   102 Am. J. Pub. Health 67 (2012) ......................................... 2

## IDENTITY AND INTEREST OF AMICI STATES

The amici States of Illinois, California, Colorado, Connecticut, Delaware, the District of Columbia, Hawaii, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Washington, and Wisconsin submit this brief in support of Plaintiff-Appellant pursuant to Federal Rule of Appellate Procedure 29(a)(2).

Amici States have a substantial interest in the public health, safety, and welfare of their communities, which includes protecting their residents from the harmful effects of gun violence. *See, e.g., Culp v. Raoul*, 921 F.3d 646, 656 (7th Cir. 2019) (substantial state interest in maintaining public safety by regulating use of firearms). The district court's decision in this case—which concluded that the federal prohibition on firearm possession for those convicted of felonies, *see* 18 U.S.C. § 922(g)(1), violates the Second Amendment—interferes with this important interest in several respects.

To start, the Second Amendment protects "'the right of law-abiding, responsible citizens to use arms' for self-defense." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 26 (2022) (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). And § 922(g)(1) protects residents in amici States by reducing the risk that individuals who are *not* "law-abiding" or "responsible" will harm themselves or others with firearms. *See, e.g., Kanter v. Barr*, 919 F.3d 437, 448-49 (7th Cir. 2019) (detailing recidivism rates for individuals convicted of felonies), *abrogated on other grounds by Bruen*, 597 U.S. 1; *United States v. Yancey*, 621 F.3d

681, 685 (7th Cir. 2010) ("someone with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent gun use").[1]

Additionally, virtually every State and the District of Columbia has implemented measures restricting gun possession by people with felony convictions—the vast majority of which resemble the prohibition in § 922(g)(1). Beyond those restrictions, many States have integrated § 922(g)(1) into a wide range of regulatory and enforcement systems designed to protect public safety.[2] For example, some state licensure regimes use § 922(g)(1) as a key indicator of whether a person is dangerous, and thus unable to possess or carry firearms in their State.[3] Likewise, certain state prohibitions on straw purchasing—that is, purchasing a firearm on behalf of another person—are tied to the knowing sale of a firearm to someone who is federally prohibited from possessing firearms, including under § 922(g)(1).[4] A decision calling § 922(g)(1) into question could destabilize these important state-level protections.

---

[1] *See also* Jakov Zlodre & Seena Fazel, *All-Cause and External Mortality in Released Prisoners: Systematic Review and Meta-Analysis*, 102 Am. J. Pub. Health 67, 72 (2012) (individuals with felony convictions are at a higher risk of suicide than the general population, especially during the initial months and years following release from prison).

[2] Dru Stevenson, *In Defense of Felon-in-Possession Laws*, 43 Cardozo L.R. 1573, 1576 (2022) ("[I]t is difficult to overstate the centrality of the felon-in-possession laws within our larger framework of firearms regulation and policy").

[3] *E.g.*, Colo. Rev. Stat. § 18-12-203(1)(c); 430 Ill. Comp. Stat. 65/8(n); 430 Ill. Comp. Stat. 66/25(2); Minn. Stat. § 624.714.

[4] *E.g.*, Cal. Penal Code §§ 27515, 27540; Colo. Rev. Stat. § 18-12-111; 720 Ill. Comp. Stat. 5/24-3.5(b); R.I. Gen. Laws. § 11-47-23.

In sum, the district court's decision undermines important state interests. The amici States thus urge this Court to reverse the district court's decision dismissing the indictment.

## SUMMARY OF ARGUMENT

In September 2021, defendant allegedly robbed several individuals at gunpoint on a train.  RSA1.[5]  Shortly thereafter, he was apprehended and charged with unlawful possession of a firearm in violation of § 922(g)(1), which prohibits the possession of firearms by individuals who have been convicted of a felony.  RSA1-2. In August 2023, defendant moved to dismiss the indictment, arguing that § 922(g)(1) violates his rights under the Second Amendment, both facially and as-applied.  RSA2.  The district court agreed with defendant and dismissed the indictment upon concluding that § 922(g)(1) was unconstitutional under the two-part standard articulated in *Bruen*.  RSA21-22.  At the first step, the court rejected the government's argument that individuals with felony convictions are not part of "the people" protected by the Second Amendment.  RSA9.  At the second, it determined that the government had not met its burden to show that § 922(g)(1) is consistent with this Nation's history and tradition of firearms regulation.  RSA21.

Amici States agree with the United States that the district court erred at both steps of the *Bruen* analysis.  As the government explains, the right to keep and bear arms is not unlimited; it protects only law-abiding and responsible individuals.

---

[5]  The opening brief is cited as "AT Br. __," and the Short Appendix to that brief is cited as "RSA__."

AT Br. 18-25. Accordingly, individuals with felony convictions are excluded from its protections. *Id.* Furthermore, there is ample historical evidence that § 922(g)(1) is consistent with this country's tradition of firearms regulation. *Id.* at 28-57. In particular, § 922(g)(1) is analogous to myriad historical regulations that categorically disqualified untrustworthy and dangerous individuals from possessing firearms, *id.* at 28-38, as well as those authorizing capital punishment and estate forfeiture for felonies, *id.* at 38-40. For these reasons, amici States urge this court to reverse the district court's decision.

Amici States write separately, however, to highlight two issues relevant to their interests. First, as the amici States set out below, the Second Amendment allows governments to enact sensible and varied regulations designed to protect the public as long as those regulations are consistent with our Nation's historical tradition. Exercising that authority, virtually all States and the District of Columbia have imposed limitations on the possession of firearms by individuals with felony convictions, and many have maintained those laws for nearly a century. Although the precise content of these regulations differs from jurisdiction to jurisdiction, at least 37 States and the District of Columbia bar individuals with felonies from possessing firearms—essentially mirroring the federal law at issue here. A decision setting aside § 922(g)(1) could call those statutes into question.

Second, § 922(g)(1) sets forth an objective and administrable standard that provides courts and defendants with clear guidance on who may possess firearms. But the same is not true of the two alternative approaches proposed by this Court in

*Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023):  either (1) requiring courts to undertake an individualized analysis of each case or (2) instituting a system whereby courts must determine whether each offense is, as a categorical matter, violent or dangerous.  As explained below, the individualized approach would be unworkable in practice because it would mire courts in fact-intensive questions in every case.  Similarly, requiring courts to make categorical determinations as to whether each crime in every State is violent or dangerous would be a time-intensive process that would be inadministrable.

## ARGUMENT

### I.     Exercising Their Authority To Keep Firearms Out Of the Hands Of Individuals Who Are Not Law-Abiding, Nearly All States Have Long Restricted Felons From Possessing Firearms.

#### A.     The Second Amendment allows States to enact measures to promote gun safety and protect against gun violence that are consistent with historical tradition.

Although this case concerns a federal statute, defendant's Second Amendment claim implicates fundamental principles of state authority.  The States have long exercised their police power to protect the health, safety, and welfare of their residents.  In fact, "the States possess primary authority for defining and enforcing the criminal law," *United States v. Lopez*, 514 U.S. 549, 561 n.3 (1995) (internal quotation marks omitted), and have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996).  These responsibilities include enacting measures to promote safety, prevent crime, and

minimize gun violence within their borders. *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 618 (2000) ("Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.").

The Supreme Court has repeatedly affirmed the States' authority in this area, even as it has defined the scope and significance of the rights conferred by the Second Amendment. Indeed, in each of its major Second Amendment opinions— *Heller*, 554 U.S. 570, *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and *Bruen*, 597 U.S. 1—the Court expressly acknowledged the important role that States play in protecting residents from gun violence. This role is consistent with our Nation's historical tradition.

To begin, in *Heller*, the Supreme Court made clear that the Second Amendment right to keep and bear arms is "not unlimited." 554 U.S. at 626. The Court explained that although governments may not ban the possession of handguns by responsible, law-abiding individuals or impose similarly severe burdens on the Second Amendment right, they still possess "a variety of tools" to combat the problem of gun violence. *Id.* at 636. And the Court made the same point shortly thereafter in *McDonald*, emphasizing that the Second Amendment "by no means eliminates" the States' "ability to devise solutions to social problems that suit local needs and values." 561 U.S. at 785; *see also id.* at 802 (Scalia, J., concurring) ("No fundamental right—not even the First Amendment—is absolute.").

The Court's recent decision in *Bruen* preserves the substantial authority that governments retain in this area. At issue in *Bruen* was a New York statute that required all individuals, including law-abiding individuals, to show a "special need" to obtain a license to carry a handgun in public. 597 U.S. at 8-15. The Court clarified that in a Second Amendment challenge to a statute restricting the possession or use of firearms, a court must ask whether the challenged statute is "consistent with the Second Amendment's text and historical understanding." *Id.* at 26. And it held that the New York statute at issue—unlike the licensing statutes employed by 43 other States, *id.* at 38 n.9—failed that test, insofar as it imposed restrictions on conduct that fell within the Amendment's scope and were inconsistent with historical practice. *Id.* at 38-39. As the Court explained, history did not support a "tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id.* at 38.

But the Supreme Court emphasized—even as it reached that conclusion—its intent to preserve governments' substantial authority to regulate the possession, sale, and use of firearms. For one, the Court explained, governments need not demonstrate that a firearms regulation is historically justified unless the party challenging that regulation shows that the conduct it burdens falls within the Second Amendment's text. *See id.* at 24 (if the Second Amendment's "plain text covers an individual's conduct . . . the government *must then* justify its regulation" (emphasis added)); *id.* at 44 n.11 (similar). For another, the Court elaborated, even once that threshold showing is met, governments can justify challenged regulations

by pointing to a historical tradition of "relevantly similar" firearms regulations—a form of "reasoning by analogy." *Id.* at 28. This approach was necessary, the Court added, because "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868." *Id.* at 27. The historical test demanded by the Second Amendment, in other words is not a "regulatory straightjacket." *Id.* at 30; *accord id.* ("[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." (emphasis in original)).

Consistent with this principle, the Supreme Court has likewise emphasized in each of its major Second Amendment cases the authority that both States and the federal government retain to regulate the possession of firearms by dangerous individuals, including felons. The Court in *Heller* explained that the Amendment protects "the right of law-abiding, responsible citizens" to possess handguns. 554 U.S. at 635. The Court thus cautioned that, given that principle, "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," a restriction it described as a "presumptively lawful regulatory measure." *Id.* at 626, 627 n.26. Multiple Justices have written separately in other cases recognizing this aspect of *Heller*, explaining that *Heller* "recognized that history support[s] the constitutionality of some laws limiting the right to possess a firearm, such as laws . . . prohibiting possession by felons," *NYSRPA v. City of New York*, 140 S. Ct. 1525, 1540-41 (2020) (Alito, J., dissenting),

and that "the Court in *Heller* affirmatively *approved* . . . felon-in-possession laws . . . based on a history-and-tradition-based test," *Heller v. District of Columbia*, 670 F.3d 1244, 1278 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (emphasis in original).

*McDonald* and *Bruen* are to the same effect. The plurality in *McDonald* observed that the Court had "made it clear in *Heller* that its holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons,'" a limitation the plurality "repeat[ed]" and reaffirmed. 561 U.S. at 786. The Court in *Bruen* repeatedly used the term "law-abiding citizen" to describe the class of persons protected by the Second Amendment, reaffirming the authority of States and the federal government to regulate the possession of firearms by those with criminal records. *See* 597 U.S. at 8, 15, 26, 29, 30, 31, 38, 60, 70, 71. And several Justices wrote separately in that case to emphasize that governments retain the authority to enact such regulations. Justice Kavanaugh, joined by the Chief Justice, concurred to emphasize the "limits of the Court's decision" and to note that, "[p]roperly interpreted, the Second Amendment allows a variety of gun regulations," including "longstanding prohibitions on the possession of firearms by felons." *Id.* at 81 (internal quotation marks omitted). And Justice Alito likewise concurred to note that *Bruen* "does not expand the categories of people who may lawfully possess a gun." *Id.* at 73.

Taken together, then, *Heller*, *McDonald*, and *Bruen* emphasize that States and the federal government retain a substantial measure of regulatory authority over firearms—and especially with respect to the possession of firearms by

individuals who are not "law-abiding" or "responsible," like felons—presuming they act consistent with the Second Amendment's text and history in regulating.

**B.    Section 922(g)(1) is consistent with longstanding measures taken by the vast majority of States.**

Consistent with this authority, the vast majority of States, like the federal government, have enacted restrictions prohibiting felons from possessing firearms. Although the States have not reached identical conclusions on how best to regulate the possession of firearms by those with felony convictions, virtually every State and the District of Columbia imposes restrictions on those convicted of felonies or other serious crimes.[6] Many of these regulations, moreover, have been in effect for nearly a century.

In the 1920s, at least seven States—California, Connecticut, Indiana, Michigan, New Hampshire, North Dakota, and Oregon—enacted laws prohibiting individuals convicted of a felony from possessing a handgun.[7] Other States, including at least six jurisdictions in the 1930s—Alabama, the District of Columbia, New Jersey, Pennsylvania, South Dakota, and Washington—prohibited possession of firearms by those convicted of violent or other enumerated crimes.[8] The federal

---

[6] *50-State Comparison:  Loss & Restoration of Civil / Firearm Rights*, Restoration of Rights Project (Sept. 2021), https://bit.ly/3HOGodK.

[7] 1923 Cal. Stat. 695, ch. 339; 1923 Conn. Pub. Acts 3707, ch. 252; 1925 Ind. Sess. Laws 495 § 4; 1927 Mich. Acts 887; 1923 N.D. Acts 379, c. 266 § 5; 1923 N.H. Sess. Laws 138, § 3; 1925 Or. Sess. Laws 468, § 2; *see also* 1927 N.J. Laws 742 (prohibiting possession of firearms for individuals convicted of enumerated crimes).

[8] *See* 1936 Ala. Acts 51 § 4; Act of July 8, 1932, Pub L. No. 72-275, ch. 465, § 4, 47 Stat. 650 (District of Columbia); 1 Rev. Stat. of New Jersey 2:176-8 (1937); Act of June 11, 1931, No. 158, §§ 4-5, Pa. Laws 497; R.I. Gen. Laws, ch. 404, § 3 (1938);

restrictions followed when, in 1938, Congress similarly restricted access to firearms by individuals convicted of a crime of violence and then, in 1968, expanded the prohibition to prohibit anyone convicted of a felony from possessing a firearm.[9]

Today, at least 37 States and the District of Columbia have determined—consistent with the federal government—that imposing restrictions on all those with felony convictions is appropriate to promote public safety and curb gun violence within their borders. Among those jurisdictions, 32 States—Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New York, North Carolina, Oklahoma, Oregon, Tennessee, Utah, Virginia, Washington, West Virginia, Wisconsin, and Wyoming—and the District of Columbia bar convicted felons from possessing firearms for an indefinite period.[10]

---

1935 S.D. Sess. Laws 355; 1935 Wash. Sess. Laws 599, § 4. States continued to implement these and similar restrictions in the decades that followed. *E.g.*, *Nelson v. State*, 195 So.2d 853 (Fla. 1967) (discussing Florida statute prohibiting possession of firearms by those convicted of felonies); *State v. Noel*, 414 P.2d 162, 163 (Ariz. Ct. App. 1966) (discussing statute prohibiting possession of firearms by individuals convicted of a crime of violence); *Application of Markham*, 134 N.W.2d 84, 85 (Neb. 1965) (discussing 1961 statute prohibiting possession of certain firearms by individuals "convicted of a crime of violence amounting to a felony").

[9] *An Act to Regulate Commerce in Arms*, Pub. L. No. 75-785, ch. 850, § 2, 52 Stat. 1250 (June 30, 1938); Pub. L. No. 9-618, 82 Stat. 1213-36 (Oct. 22, 1968).

[10] Ariz. Rev. Stat. §§ 13-904(A)(5), 13-3101(A)(7)(B), 13-3102(A)(4); Ark. Code Ann. § 5-73-103; Cal. Penal Code § 29800(a); Colo. Rev. Stat. § 18-12-108(1); Conn. Gen. Stat. § 53a-217c(a); D.C. Code § 22-4503(a); Del. Code Ann. Tit. 11, § 1448(a)(6); Fla. Stat. § 790.23; Ga. Code Ann. § 16-11-131(b); Haw. Rev. Stat. § 134-7; 430 Ill. Comp. Stat. 65/4(a)(2)(ii), 65/8(c); Iowa Code § 724.26(1); Ky. Rev. Stat. Ann. § 527.040(1); Me. Stat. tit. 15, § 393(1); Md. Code Ann., Pub. Safety § 5-133(b)(1), 5-101(g)(2);

As in the federal system, AT Br. 48-49, many of these state statutes contain a mechanism for individuals subject to this bar to have their firearm rights restored—and thus obtain relief from an indefinite restriction—whether through expungement, gubernatorial pardon, or similar procedures.[11]  In Illinois, for example, individuals with felony convictions may obtain such relief by submitting a petition showing that they are not likely to act in a manner dangerous to the public, that granting relief would not be contrary to the public interest, and that they have not been convicted of a forcible felony during the preceding 20 years, or that at least 20 years have passed since their incarceration for any forcible felony.  *Evans v. Cook Cnty. State's Att'y*, 183 N.E.3d 810, 820 (Ill. 2021) (citing 430 Ill. Comp. Stat. 65/10(c)(1)-(3)).  Indiana and Wisconsin likewise provide a path for restoration: through the pardon process in Wisconsin and either expungement or pardon in Indiana.[12]

Five other States—Alaska, Kansas, New Mexico, North Dakota, and Texas—also bar convicted felons from possessing firearms, but for a statutorily defined

---

Mass. Gen. Laws. ch. 140, § 131; Mich. Comp. Laws § 750.224f; Minn. Stat. § 624.713, subd. (1)(10)(i); Miss. Code Ann. § 97-37-5(1); Mo. Rev. Stat. § 571.070(1); Neb. Rev. Stat. § 28-1206(1)(a); Nev. Rev. Stat. § 202.360(1); N.Y. Penal Law § 400.00; N.C. Gen. Stat. § 14-415.1; Okla. Stat. tit. 21, § 1283(A); Or. Rev. Stat. §§ 166.270, 166.250; Tenn. Code Ann. § 39-17-1307(f)(1)(C); Utah Code Ann. § 76-10-503; Va. Code Ann. § 18.2-308.2; Wash. Rev. Code § 9.41.040; W. Va. Code § 61-7-7(a)(1); Wis. Stat. § 941.29; Wyo. Stat. § 6-8-102.

[11]  Restoration of Rights Project, *supra* note 6.

[12]  Official Opinion No. 2019-6, Office of the Indiana Attorney General (Dec. 10, 2019), https://bit.ly/3Pu5gvs; Wisc. Stat. § 941.29(5)(a) (firearm rights restored via pardon).

period of time that is not dependent upon a separate restoration of rights process. For example, Texas bars possession for a fixed period of five years, whereas Alaska and New Mexico impose a ban for ten years.[13] And in Kansas and North Dakota, the length of the ban—ranging from three months to an indefinite prohibition—depends on the nature of the felony.[14]

Some States impose restrictions utilizing slightly different metrics. For instance, Idaho, Indiana, Montana, New Hampshire, New Jersey, Pennsylvania, and Rhode Island prohibit anyone convicted of statutorily enumerated felonies from possessing firearms.[15] And a small minority of States bar firearm possession for those convicted only of violent offenses. Of those, Alabama, Louisiana, South Dakota, and Vermont prohibit anyone convicted of violent crime, including a violent felony, from possessing firearms, while South Carolina specifically prohibits felons convicted of crimes of violence from possessing firearms.[16] But regardless of these variations, virtually every State and the District of Columbia have elected to impose restrictions on firearms for those convicted of felonies.

In short, § 922(g)(1)'s prohibition on felons possessing firearms is consistent with the Supreme Court's recognition in *Heller*, *McDonald*, and *Bruen* that the

---

[13] Alaska Stat. § 11.61.200(a)(1), (b)(1)(c); N.M. Stat. Ann. § 30-7-16(A); Tex. Penal Code Ann. § 46.04(a), (e).

[14] Kan. Stat. Ann. § 21-6304; N.D. Cent. Code § 62-02-01(1)(a).

[15] Idaho Code Ann. § 18-3316(1); Ind. Code Ann. § 35-47-4-5; Mont. Code Ann. § 45-8-313; N.H. Rev. Stat. Ann. § 159:3; N.J. Stat. Ann. § 2C:39-7; 18 Pa. Cons. Stat. Ann. § 6105(b); R.I. Gen. Laws § 11-47-5.

[16] Ala. Code § 13A-11-72(a); La. Rev. Stat. § 14:95:1(A); S.C. Code § 16-23-500; S.D. Codified Laws § 22-14-15; Vt. Stat. Ann. tit. 13, §§ 4017(a).

States and the federal government retain substantial authority to decide who may possess firearms, as well as with the way that States have elected to handle this issue for nearly a century.

## II. Any Alternative To § 922(g)(1) Would Create Substantial Administrability Problems.

In addition to mirroring the longstanding approach taken by the majority of the States, § 922(g)(1)'s categorical restriction on felons has the benefits of creating a fair and readily administrable system for distinguishing between those individuals with criminal convictions who can possess firearms and those who cannot. As this court noted in *Atkinson*, there are two potential alternatives to the felony line drawn in § 922(g)(1): (1) individual determinations based on the particular facts of each case, and (2) distinguishing between felonies that are dangerous and non-dangerous based on the elements of the crime. 70 F.4th at 1024. But while it is generally clear whether a crime constitutes a felony as a matter of federal or state law, and thus whether firearm possession is barred is barred under § 922(g)(1) and similar state statutes, neither of the available alternatives would provide an administrable or fair system. On the contrary, these approaches would create substantial practical difficulties that are not present under § 922(g)(1), and the latter would also present problems of under- and over-inclusivity.

To begin, undertaking a case-by-case approach would be unworkable. As explained, *supra* Section I.B, no State has undertaken such an approach, and even the district court rejected it as a viable alternative option. RSA16 (citing *Atkinson*, 70 F.4th at 1027 (Wood, J., dissenting)). Among other difficulties, a case-by-case

approach would mire courts in a wide range of fact-intensive inquiries, such as the details of the predicate conviction, the circumstances surrounding the defendant's unlawful possession of the firearm, and the defendant's criminal history, dangerousness, and propensity for violence, among others. There is also the matter of when, how, and by whom these determinations would be made—for instance, whether they would be made by courts in the jurisdiction of the underlying offense or by a federal court, and whether they would be conducted on a prospective or retrospective basis.

Similar difficulties would arise under a system based on whether the crime itself is "violent" or "dangerous." For starters, such an approach would require courts to undertake the time-intensive process of determining whether each crime in every State is violent or dangerous.[17] And practical difficulties will arise in making these determinations because categorizing crimes as violent or dangerous is not always a straightforward task. On the contrary, it can be challenging to fairly categorize crimes as being inherently violent or dangerous because there are many—for example, burglary, battery, arson, and involuntary manslaughter— where at least one of the elements can be committed in either a violent or non-violent way.[18] But this proposed regime, courts would be required to decide whether burglary is violent or non-violent under each state statute, irrespective of

---

[17] Stevenson, *supra* note 2, at 1606-08; Rachel E. Barkow, *Categorical Mistakes: The Flawed Framework of the Armed Career Criminal Act and Mandatory Minimum Sentencing*, 133 Harv. L. Rev. 200, 206-07 (Nov. 2019).

[18] Barkow, *supra* note 17, at 202-07 (Nov. 2019).

the specific circumstances.[19] And under such an approach, there will necessarily be problems of under- and over-inclusivity. As one example, when confronted with making such a categorical determination in the context of applying a sentence-reduction credit, the Pennsylvania Supreme Court determined that first-degree burglary is a "violent crime," because "non-privileged entry . . . invites dangerous resistance and . . . the possibility of the use of deadly force against either the offender or the victim." *Commonwealth v. Chester*, 101 A.3d 56, 65 (Pa. 2014) (cleaned up). And under that view, "the fact that [the defendant] did not actually engage in any violent acts while committing first-degree burglary does not render that crime 'non-violent.'" *Id.*

Indeed, the challenges associated with distinguishing between "violent" and "non-violent" are illustrated by cases applying the Armed Career Criminal Act (ACCA).[20] Under ACCA, courts are tasked with determining whether defendants have previously been convicted of three "violent" felonies. 18 U.S.C. § 924 *et. seq.* As surveys of ACCA decisions have shown, this "crime of violence" test has led to unexpected, counterintuitive, and internally contradictory results.[21] For instance, in *United States v. Simmons*, 847 Fed. App'x 589 (11th Cir. 2021), the defendants had been convicted of armed robbery of four jewelry stores and charged with both

---

[19] *Id.*

[20] Amici States do not contend or concede that ACCA precedent would apply in the Second Amendment context, but use these examples of the administrability challenges inherent in such a categorical approach.

[21] Stevenson, *supra* note 2, at 1606-14; Barkow, *supra* note 17, at 202-07.

federal kidnapping and robbery. *Id.* at 591-93. Although both charges arose from the same incident, the court concluded that, under its ACCA precedent, federal kidnapping constituted a crime of violence, but federal robbery did not. *Id.* at 591, 593.

In another case, a defendant was convicted of involuntary manslaughter after firing artillery at a nearby gathering and then using his rifle to shoot three people, killing one. *United States v. Mann*, 786 F.3d 1244, 1246-47 (10th Cir. 2015). But the ACCA sentencing enhancement did not apply in that case because "involuntary manslaughter is not a crime of violence" under the ACCA standard. *United States v. Mann*, 982 F. Supp. 2d 1251,1256 (D.N.M. 2013), *aff'd United States v. Mann*, 786 F.3d 1244 (10th Cir. 2015); *see also United States v. Martinez*, 991 F.3d 347, 352 (2d Cir. 2021) (observing that while "it might surprise a reader . . . to learn there is any question as to whether participating in the affairs of a street gang committed to committing violent crimes . . . constitutes a 'crime of violence,' . . . the Supreme Court's case law . . . give[s the defendant] a plausible argument that it does not").

Finally, a system based on such categorical determinations would create additional burdens for both defendants and the federal government. Whereas "individuals who are convicted felons ordinarily know that they are convicted felons," *Greer v. United States*, 141 S. Ct. 2090, 2095 (2021), "it would be *very* difficult for an individual to know ex ante—say, at the time of purchasing or borrowing a firearm from an acquaintance—whether their felony counts as

'violent.'"[22]  This would not only create confusion among individuals who were convicted of felonies, but also make it more difficult for the federal government to successfully prosecute violations of § 922(g)(1).  Indeed, if an individual were legitimately confused as to whether his or her felony was considered "violent" or "dangerous," the federal government may have difficulty satisfying its burden to "show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it."  *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019).

In short, the standard employed by the federal government and the vast majority of States provides clarity and administrability.  By contrast, the alternative proposals—requiring individualized determinations or categorizing crimes as "dangerous" or "violent"—would create substantial administrability problems for courts across the country.

---

[22]  Stevenson, *supra* note 2, at 1622 (emphasis in original).

## CONCLUSION

For these reasons, the Court should reverse the judgment below.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

/s/ Sarah A. Hunger
SARAH A. HUNGER
Deputy Solicitor General
JOHN R. MILLIGAN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202
sarah.hunger@ilag.gov

March 19, 2024

ROB BONTA
Attorney General of California

PHILIP J. WEISER
Attorney General of Colorado

WILLIAM TONG
Attorney General of Connecticut

KATHLEEN JENNINGS
Attorney General of Delaware

BRIAN L. SCHWALB
Attorney General of the District of Columbia

ANNE E. LOPEZ
Attorney General of Hawaii

AARON M. FREY
Attorney General of Maine

ANTHONY G. BROWN
Attorney General of Maryland

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

DANA NESSEL
Attorney General of Michigan

KEITH ELLISON
Attorney General of Minnesota

AARON D. FORD
Attorney General of Nevada

MATTHEW J. PLATKIN
Attorney General of New Jersey

RAÚL TORREZ
Attorney General of New Mexico

LETITIA JAMES
Attorney General of New York

JOSHUA H. STEIN
Attorney General of North Carolina

ELLEN F. ROSENBLUM
Attorney General of Oregon

MICHELLE A. HENRY
Attorney General of Pennsylvania

PETER F. NERONHA
Attorney General of Rhode Island

ROBERT W. FERGUSON
Attorney General of Washington

JOSHUA L. KAUL
Attorney General of Wisconsin

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 4,813 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface requirement of Rules 32(a)(4), 32(a)(5), and 32(a)(6) because the brief is double-spaced and has been prepared in a proportionally spaced typeface (12-point Century Schoolbook) using Microsoft Word.


/s/ Sarah A. Hunger
SARAH A. HUNGER

March 19, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2024, I electronically filed the foregoing Brief of Amicus Curiae State of Illinois, et al., with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


/s/ Sarah A. Hunger
SARAH A. HUNGER